UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIANFRANCO RUFFINO,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA; and DOES 1 through 100, inclusive,[1]<br><br>  Defendants. | No. 2:16-cv-02719-KJM-CKD<br><br>ORDER |

Defendant, the United States, moves to dismiss plaintiff Gianfranco Ruffino's negligence claim. ECF No. 27. Defendant contends this court lacks subject matter jurisdiction based on the discretionary function exception of the Federal Tort Claims Act (FTCA). For the reasons set forth below, the court DENIES defendant's motion to dismiss in part and GRANTS it in part.

///

///

---

[1] If a defendant's identity is unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* at 642. The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m).

1

I. BACKGROUND

In November 2015, the United States Forest Service (USFS) was overseeing the execution of the 2015 El Dorado County Pile Burn Prescribed Fire Plan (the "Burn Plan"), which called for prescribed burns in portions of forest lands in and around South Lake Tahoe. Mot., ECF No. 27-1, at 11[2]. The Lake Tahoe Basin Management Unit (the "Basin") is one of the forests included in the Burn Plan. *Id.* One of the prescribed burns in the Basin took place in what USFS called "Meow 175," an area spanning roughly nine acres in South Lake Tahoe. *Id.* at 13. Meow 175 was ignited on November 12, 2015 and remained in "patrol status" until November 17, 2015. Mot. at 13.

To notify the public of the burn, USFS issued several notifications, including a press release and posts on various social media sites. Mot. at 13; Opp'n, ECF No. 28, at 6. Employees also placed three signs at the intersections of the entrances to the neighborhood nearest the location of the Meow 175 fire. Mot. at 14 (citing Washington Decl. ¶ 40; Scarborough Decl., Ex. 2 at 95:14–96:6; *id.*, Ex. 3 at 40:15–42:3); Opp'n at 6.

While on a retreat in South Lake Tahoe on November 14, 2015, plaintiff Gianfranco Ruffino went sledding in a recreation area across the street from his rental home. Mot. at 15. He suffered second- and third-degree burns when his sled stopped over the remains of Meow 175, which had been covered by a recent snowfall. Opp'n at 14. Plaintiff contends he never saw any of USFS's notifications warning of the burn. Opp'n at 13 (citing Ruffino Dep., ECF No. 28-18, at 45:22–24).

Plaintiff brought the instant suit against the United States on November 11, 2016, bringing a single claim and alleging USFS negligently managed the prescribed burn at Meow 175. Compl., ECF No.1, ¶¶ 6–31. On May 18, 2018, the United States brought the pending motion to dismiss plaintiff's claim for lack of subject matter jurisdiction, alleging that USFS is protected by sovereign immunity under the discretionary function exception to the FTCA. Mot. at 5. Plaintiff opposes, arguing that USFS violated mandatory and specific policies in the

---

[2] Citations to the filings refer to ECF pagination, not the document's internal page numbers, except for citations to declarations and depositions, which refer to the internal pagination.

2

Interagency Prescribed Fire Planning and Implementation Guide ("PMS 484") by failing to have a qualified employee oversee the Meow 175 burn and failing to perform a public safety risk assessment, and that USFS's failure to warn the public of a concealed hazard is not protected by the discretionary function exception to the FTCA. *See generally* Opp'n. Defendant filed a reply, ECF No. 29. Defendant also filed a Notice of Supplemental Authority on July 16, 2018, ECF No. 34 (citing *Morales v. United States*, 895 F.3d 708, 716 (9th Cir. 2018)), and plaintiff responded, ECF No. 35. The court submitted the motion on the briefing, and resolves it here.

II. LEGAL STANDARD

A. Dismissal for Lack of Subject Matter Jurisdiction

A Federal Rule of Civil Procedure 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, the United States launches a factual attack because it relies on extrinsic evidence to challenge the complaint's allegations. *See Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016) (challenge was factual where United States filed declarations and affidavits challenging plaintiffs' allegations that government owed them a legal duty); *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (jurisdictional challenge was factual attack where it "relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings").

The nature of a court's review of a factual attack depends on whether the jurisdictional and merits issues intertwine. "Ordinarily, where a jurisdictional issue is separable from the merits of a case, the court may determine jurisdiction by the standards of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). In those circumstances, a court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, and make findings of fact as to jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *Rosales v. United*

*States*, 824 F.2d 799, 803 (9th Cir. 1987). No presumption of truthfulness attaches to the plaintiff's allegations, *Rosales*, 824 F.2d at 803, but the court resolves any factual disputes in the plaintiff's favor, *Edison*, 822 F.3d at 517 (citing *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996)). The plaintiff retains the burden to establish the court's subject matter jurisdiction. *Id.* (citing *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009)).

Rule 12(b)(1)'s relatively expansive standards, however, are inappropriate where issues of jurisdiction and substance "intertwine." *Roberts*, 812 F.2d at 1177. Instead, where these issues are "so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits," the district court applies a summary judgment standard. *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) (quoting *Rosales*, 824 F.2d at 803). The court should grant the motion to dismiss only if, while viewing the evidence in the light most favorable to the non-movant, the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Suzuki Motor Corp. v. Consumers Union of United States, Inc.*, 330 F.3d 1110, 1131–32 (9th Cir. 2003) (en banc); *Rosales*, 824 F.2d at 803. Where the intertwined factual issues are disputed, discovery should be allowed, *America West Airlines v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989), and the court should leave the resolution of the jurisdictional issues to the trier of fact, *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 920, 924 (9th Cir. 2002); *Thornhill Pub. Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 735 (9th Cir. 1979) ("[W]here the jurisdictional issue and the substantive issues are so intermeshed that the question of jurisdiction is dependent on decision of the merits, a party is entitled to have the jurisdictional issue submitted to the jury, rather than having the court resolve factual issues.").

In large part, the dispositive issues here involve jurisdictional facts that are not intertwined with the substance of plaintiff's case. Because the United States moves to dismiss based on the FTCA's "discretionary function" exception, the court looks to applicable statutes, regulations or policies to decide whether the United States retained discretion to act. Because

/////

4

determining whether the defendant had discretion to act is separate from determining how it in fact acted, the jurisdictional and substantive issues in this respect are not intertwined.

Accordingly, the court reviews all relevant evidence to resolve any factual disputes concerning the existence of jurisdiction, primarily related to proper construction of the text of official manuals. However, to the extent jurisdiction turns on whether a violation of a policy actually occurred, the jurisdictional and substantive facts are intertwined, and the court applies a summary judgment standard.

B. Sovereign Immunity and the FTCA

The United States may not be sued without its consent; if it does consent, the terms of its consent define the scope of the court's jurisdiction. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation omitted). The consent must be unequivocally express, not implied. *Id.* (citing *United States v. King*, 395 U.S. 1, 4 (1969)).

The FTCA provides a limited waiver of sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 813 (1976). The FTCA makes the federal government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment. *Id.* Specifically, the United States may be liable "in the same manner and to the same extent as a private individual under like circumstances." *United States v. Olson*, 546 U.S. 43, 46 (2005) (quoting 28 U.S.C. § 2674); *see also* 28 U.S.C. § 1346(b)(1).[3]

The FTCA contains several exceptions to the waiver of sovereign immunity. *See* 28 U.S.C. § 2680(a)–(n). Under the "discretionary function" exception, the government may not be liable for acts grounded in public policy considerations that involve an element of judgment. 28 U.S.C. § 2680(a) (excluding from liability "an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function"); *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991) (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)); *United States v. Varig Airlines*, 467 U.S.

---

[3] Section 1346 gives federal district courts jurisdiction over claims brought against the United States involving injury or loss of property "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

5

1 | 797, 813 (1984)).  This exception "insulates certain governmental decision-making from judicial
2 | second-guessing of legislative and administrative decisions grounded in social, economic, and
3 | political policy through the medium of an action in tort." *Myers v. United States*, 652 F.3d 1021,
4 | 1028 (9th Cir. 2011) (internal quotation marks and citations omitted).  "In other words, 'if judicial
5 | review would encroach upon th[e] type of balancing done by an agency, then the [discretionary
6 | function] exception' applies." *O'Toole v. United States*, 295 F.3d 1029, 1033 (9th Cir. 2002)
7 | (quoting *Begay v. United States*, 768 F.2d 1059, 1064 (9th Cir. 1985)).

The Supreme Court prescribes a two-part test for determining if the discretionary function exception applies. *See Gaubert*, 499 U.S. at 322–25; *Berkovitz*, 486 U.S. at 536–37. First, a court asks whether the challenged action was discretionary or if "it was governed by a mandatory statute, policy, or regulation." *Whisnant v. United States*, 400 F.3d 1177, 1180–81 (9th Cir. 2005).  This inquiry looks at the "nature of the conduct, rather than the status of the actor." *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (quoting *Berkovitz*, 486 U.S. at 536).  The exception will not apply if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," and a mandatory directive ends the inquiry because the employee "has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536.

Second, if the action was discretionary, the court asks whether the challenged action is of the type Congress meant to protect, "i.e., whether the action involves a decision susceptible to social, economic, or political policy analysis." *Whisnant*, 400 F.3d at 1180–81 (citing *O'Toole*, 295 F.3d at 1033–34).  If both steps are satisfied, the exception applies even if the ultimate decision reflects an abuse of discretion. *Terbush*, 516 F.3d at 1129 (citing 28 U.S.C. § 2680(a)).  "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.

/////
/////
/////

6

Courts apply the discretionary function exception while taking account of the statute's purpose. "[T]he FTCA was created by Congress with the intent to compensate individuals harmed by government negligence, and as a remedial statute, it should be construed liberally, and its exceptions should be read narrowly." *Terbush*, 516 F.3d at 1135 (internal quotations omitted) (quoting *O'Toole*, 295 F.3d at 1037); *see also Rayonier Inc. v. United States*, 352 U.S. 315, 320 (1957). As noted above, a plaintiff bears the burden of showing the court has subject matter jurisdiction under FTCA's general waiver of immunity. *Prescott v. United States*, 973 F.2d 696, 701–02 (9th Cir. 1992). The United States, however, has the burden of proving one of the FTCA's exceptions to the waiver of immunity applies. *Id.* (citing *Stewart v. United States*, 199 F.2d 517, 520 (7th Cir. 1952)); *but see In re Camp Lejeune N. Carolina Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1346 n.119 (N.D. Ga. 2016) (noting Circuit split regarding which party has burden to prove an FTCA exception applies, with Eleventh Circuit deciding burden is on plaintiff to prove a waiver of sovereign immunity exists, and Ninth and Third Circuits finding government has burden of proving discretionary function exception applies). Where the summary judgment standard applies, "[t]he plaintiff has the burden of showing that there are genuine issues of material fact as to whether the exception should apply, but the government bears the ultimate burden of establishing that the exception applies." *Miller v. United States*, 163 F.3d 591, 594 (9th Cir. 1998).

III. ANALYSIS

Plaintiff challenges three specific failures by USFS: (1) Failing to have a supervisory-level "burn boss" oversee the Meow 175 fire; (2) Failing to perform a public safety risk assessment before igniting the burns; and (3) Failing to provide additional warnings or protection from burn risks after snowfall concealed the burn piles. Opp'n at 4. The court applies the Supreme Court's two-step test, as outlined above, to each of these challenges below.

    A.    <u>Supervisory-Level "Burn Boss"</u>

Plaintiff argues that PMS 484, explained below, mandated USFS to have a "qualified burn boss supervising and monitoring Meow 175" and that "[t]he only qualified burn boss left for vacation the day the fires were started . . . ." Opp'n at 4 (citing Buckley Depo., ECF

No. 28-11 at 38:3–39:8). Defendant does not argue that the burn boss requirement in PMS 484 is specific and mandatory, but instead counters that there was, in fact, a qualified burn boss supervising Meow 175 during the relevant time period. Reply at 4 (citing Etheridge Dep., ECF No. 29-6, at 19:11–20, 24:3–7, 46:8–12, 47:16–17, 50:22–51:8).

### 1. Governed by a Mandatory Statute, Policy or Regulation

As explained above, the court must first analyze whether the challenged conduct "involve[s] an element of judgment or choice." *Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016) (internal quotation marks and citation omitted). "In making this examination, it is 'the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies . . . .'" *Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015) (quoting *Varig,* 467 U.S. at 813). "If there is . . . a statute or policy directing mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere to the directive." *Terbush v. United States,* 516 F.3d 1125, 1129 (9th Cir. 2008) (internal quotation marks omitted).

#### a. PMS 484

PMS 484 is the Interagency Prescribed Fire Planning and Implementation Procedures Guide, published by the National Wildfire Coordinating Group, of which the Forest Service is a member,[4] that "provides standardized procedures" and "unified direction and guidance for prescribed fire implementation and planning for the . . . U.S. Department of Agriculture Forest Service (USFS)," and describes "what is minimally acceptable for prescribed fire planning and implementation." PMS 484, ECF No. 27-5, at 3, 7. The guide states, "[Member] [a]gencies may choose to provide more restrictive standards and policy direction, but must adhere to these minimums." *Id.* at 7. While "a few, isolated provisions cast in mandatory language do not transform an otherwise suggestive set of guidelines into binding agency regulations," *Sabow v. United States*, 93 F.3d 1445, 1453 (9th Cir. 1996), *as amended* (Sept. 26, 1996), PMS 484, by contrast, mandates as a floor what is "minimally acceptable" for prescribed

---

[4] *See* The National Wildfire Coordinating Group, https://www.nwcg.gov/.

burns. PMS 484 is thus a binding "federal statute, regulation, or policy" that may include mandatory directives relevant to the first step of the Supreme Court's test. *See Berkovitz*, 486 U.S. at 536.

### b. Burn Boss Requirement

The specific provision in PMS 484 relevant to the burn boss requirement reads as follows: "No less than the minimum implementation organization described in the approved Prescribed Fire Plan may be used for implementation. . . . The minimum supervisory position qualifications determined by prescribed fire complexity are identified in Table 1." PMS 484 at 10. Table 1 shows that "RXB3" is "required" for a "low complexity" fire. *Id.* Meow 175 was deemed a low complexity fire by USFS. Fire Plan, ECF No. 27-6, at 2. The assigned burn boss for any prescribed fire is responsible for "[s]upervis[ing] assigned personnel and direct[ing] the ignition, holding and monitoring operations. Responsible for implementation including mop up and patrol unless otherwise assigned to other qualified personnel." PMS 484 at 15. The parties appear to agree that these two provisions mean that a burn boss of at least "level three" (indicated by "RXB3"), a title that indicates certain experience and training laid out in the PMS 484, *id.* at 11, must supervise a prescribed burn that is low complexity. *See* Opp'n at 15; Reply at 3–4.

The language in PMS 484 regarding the requirement of a level three burn boss for a low complexity fire is specific and mandatory. It lays out a precise minimum qualification level for a precise type of fire and states that a supervisor of at least a certain level of training is "required," and therefore mandatory. This directive does not leave room for discretion; in following these mandatory guidelines, a USFS employee has "no rightful option but to adhere to the directive." *Terbush,* 516 F.3d at 1129 (citation omitted).

### c. Relevance of the Burn Boss Requirement to Jurisdiction

The relevance of this mandatory and specific directive depends on a factual issue: whether or not the USFS violated the directive by failing to have a qualified burn boss supervise the Meow 175 fire. This factual issue is in dispute. The parties seem to agree that Mr. Soldavini was a qualified burn boss, that he supervised the burn during the first day, Reply at 4 (citing Soldavini Dep. at 87:13–20), and that he was not on site for the two days following the ignition

date, *id.* (citing Soldavini Dep. at 87:22); Opp'n at 4–5 (citing Buckley Dep. at 38:3–39:8). Mr. Buckley, Soldavini's trainee, was responsible for the fire while Soldavini was not on site, but the parties dispute whether Buckley was on site in the two days following ignition. Plaintiff states that Buckley was absent after the first day of the burn, and defendant does not dispute this. *See* Opp'n at 4 (citing Buckley Dep. at 38:33–39:8); Reply at 4. Defendant only provides evidence that Buckley maintained phone contact with Soldavini when Soldavini was off-site. Reply at 4 (citing Buckley Depo. at 73:10–17). To show USFS complied with the requirement for a level three burn boss to supervise the Meow 175 fire, defendant points to testimony from Brian Etheridge, a level three burn boss, who stated in his deposition that he "did some patrolling after the day of ignition," Etheridge Dep. 19:11–20, including November 13th and 14th, the two days following the ignition of Meow 175, *id.* at 47:16–17, 50:22–51:8. Given the ambiguity in the description of "some patrolling," this testimony does not conclusively resolve the factual dispute over whether there was a qualified burn boss "supervising" the burn in compliance with the PMS 484.

If plaintiff is correct that defendant violated the burn boss requirement, the PMS's directive is relevant to the government's alleged negligence, and the discretionary function exception to the FTCA does not apply. At the same time, the factual dispute reviewed here goes to the merits of plaintiff's negligence claims. Thus, the jurisdictional issue and the merits of the claims are "so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits." *Autery*, 424 F.3d at 956 (quoting *Rosales*, 824 F.2d at 803). Therefore, the court applies a summary judgment standard. *Id*. The court should grant the motion to dismiss only if, viewing the evidence in the light most favorable to the non-movant, the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Suzuki Motor Corp.*, 330 F.3d at 1131; *Rosales*, 824 F.2d at 803. Because there is a genuine issue of material fact that affects jurisdiction, defendant cannot prevail as a matter of law alone, and the court must DENY the motion to dismiss on this basis.

/////

/////

2. <u>Susceptible to Social, Economic, or Political Policy Analysis</u>

The court need not proceed to the second step of the Supreme Court's test for the application of the discretionary function exception, because it has found that there is a mandatory and specific policy controlling the agency's decision-making with respect to the burn boss supervision of the Meow 175 fire.

B. <u>Public Safety Assessment</u>

Plaintiff also argues that PMS 484 requires the USFS to have conducted an analysis of safety risks to the public, and that USFS failed to do so. Opp'n at 6–9. PMS 484 states that a burn plan must contain a Complexity Analysis Summary (CAS) for each prescribed burn. Opp'n at 7; PMS 484 at 23 (listing "each individual element required as part of a complete prescribed fire . . . ," which includes Element Three, the Complexity Analysis Summary). As part of the CAS, the PMS 484 states that "[r]isks and uncertainties relating to prescribed fire activities must be understood, analyzed, communicated, and managed as they relate to the cost of either doing or not doing any activity . . . ." *Id.* Because a risk to the public was identified in the CAS, Burn Plan at 62–64, plaintiff argues that USFS was required to conduct an analysis of the risk to the public, and it failed to do so. Opp'n at 7 (citing Griscom Dep. at 32:19–33:4; Etheridge Dep. 68:23–69:8; Soldavini Dep. at 83:5–7; Washington Dep. at 22:4–5).

Additionally, plaintiffs highlight language in Element Thirteen of the PMS 484 which states, "provisions for public and personnel safety must be described. . . . [The plan] must include safety hazards (including smoke exposure, smoke on roads, and other impacts) and measures taken to reduce those hazards." PMS 484 at 30. Defendant argues these provisions "are only general policies relating to consideration of public safety issues; they do not impose mandatory or specific requirements about any particular safety issue the Forest Service was required to consider." Reply at 5.

1. <u>Element Three / Public Safety Analysis</u>

The PMS 484 states: "Risks and uncertainties relating to prescribed fire activities must be understood, analyzed, communicated, and managed as they relate to the cost of either doing or not doing any activity . . . ." PMS 484 at 23.

11

a. <u>Governed by a Mandatory Statute, Policy or Regulation</u>

Though the CAS requirement includes some mandatory language, namely the word "must," "[t]he existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion." *Miller*, 163 F.3d at 595 (citing *Blackburn v. United States*, 100 F.3d 1426, 1429 (9th Cir. 1996) (policy manuals mandating warnings necessarily involved discretion); *Valdez v. United States,* 56 F.3d 1177, 1179 (9th Cir. 1995) (management guidelines, though using mandatory language, are mandatory only in sense they set forth broad policy goals attainable only by exercise of discretion); *Childers v. United States,* 40 F.3d 973, 974 (9th Cir. 1995) (statutes and procedures determining whether to post signs or close trails require discretion)). The provision directing employees to "analyze[], communicate[], and manage[]" risks is similar to the policy provision in *Blackburn*, which required the National Park Service to "identify hazards in the park environment to protect park visitors from accident or illness." *Blackburn*, 100 F.3d at 1431. The court in *Blackburn* held this kind of policy is discretionary because it does not "set out the specific means by which the [employees] are to meet these general goals." *Id.* at 1431. Similarly, PMS 484 does not set out the specific means by which employees are required to analyze, communicate, and manage risks, nor does it specify whether all possible risks must be identified, thus leaving employees with some discretion. *See Valdez*, 56 F.3d at 1180 ("[T]he Management Guidelines' broad mandate to warn the public of 'special hazards' through educational materials, brochures, pamphlets, and the like necessarily encompasses an element of discretion in identifying such hazards. Because the [government] cannot apprise the public of every potential danger . . . a degree of judgment is required in order to determine which hazards require an explicit warning and which hazards speak for themselves."). Therefore, Element Three does not provide a specific and mandatory policy; defendant's actions alleged to have violated Element Three's guideline may fall under the discretionary function exception and be protected from suit if the actions involved decisions "susceptible to policy analysis." *See Whisnant*, 400 F.3d at 1180–81.

b. <u>Susceptible to Social, Economic, or Political Policy Analysis</u>

Next, the court analyzes whether the government's decision to "not conduct a risk analysis for the public" is susceptible to a policy analysis. At the second step of the discretionary function test, if the decision implicates the "design" of "a course of governmental action," it is generally protected under the exception, even where the implementation of that course of action is not. *Whisnant*, 400 F.3d at 1181. Here, the decision of how and to what degree to analyze public safety risks is related to the design of USFS's plan for the burn, not the implementation of that plan.

However, there is some authority for the argument that, even if the mandate was discretionary, the decision to completely ignore PMS 484's mandate to analyze public safety risks would not be a decision susceptible to policy analysis, and would therefore not be protected by the exception. *See Childers*, 40 F.3d at 976 ("The discretionary exception would not apply if the NPS ignored the safety manual's mandate that the public be 'adequately warned.' However, decisions as to *the precise manner* in which NPS would warn the public as to trails which are left open, but unmaintained in the winter, clearly fall within the discretionary function exception.") (emphasis in original). Nevertheless, as explained above, defendant has met its burden to show that the government conducted some analysis of public safety risks, even viewing the evidence in the light most favorable to the plaintiff. *See* Burn Plan at 64 ("Minimal potential for serious accidents/injuries to firefighters or the public . . . Most safety concerns can easily be mitigated but some remain that require extra caution during project operations. The project briefing will include a safety briefing with special issues or emphasis areas.").

Therefore, defendant did not completely ignore the requirement, but rather analyzed the risks in a way plaintiff deems insufficient. Because such a decision is discretionary and implicates the design of the government's course of action with respect to the prescribed burn, it is the type of decision that is protected under the discretionary function exception. *Whisnant*, 400 F.3d at 1181.

## 2. Element Thirteen

The PMS 484 also states: "[P]rovisions for public and personnel safety must be described. . . . [The plan] must include safety hazards (including smoke exposure, smoke on roads,[5] and other impacts) and measures taken to reduce those hazards." PMS 484 at 30.

### a. Governed by a Mandatory Statute, Policy or Regulation

Element Thirteen is mandatory and specific insofar as it requires an employee to include in the burn plan some mention of provisions for public safety, safety hazards, and measures taken to reduce those hazards. Unlike Element Three, Element Thirteen does not leave the employee with discretion regarding "the specific means" by which an employee is to meet a certain goal; rather, it gives employees no choice but to write down ("describe," "include") specific items ("provisions for public and personnel safety," "safety hazards" and "measures taken to reduce those hazards") in the burn plan, presumably to further the agency's goal of "providing for firefighter and public safety" *See* PMS 484 at 7.

However, the mandatory aspect of Element Thirteen is irrelevant to the jurisdictional question, because, even applying a summary judgment standard, any mandate is satisfied in defendant's burn plan. *See Autery*, 424 F.3d at 956. In the CAS included in the burn plan's appendix, under "Safety," the plan states "Minimal potential for serious accidents/injuries to firefighters or the public . . . Most safety concerns can easily be mitigated but some remain that require extra caution during project operations. The project briefing will include a safety briefing with special issues or emphasis areas." PMS 484 at 64. While this description is fairly sparse, it meets Element Thirteen's requirement to "describe" "provisions for public and personnel safety" by stating that a safety briefing will be carried out. Elsewhere, the plan describes "safety hazards" as "Working in winter weather conditions, driving to project site, smoke inhalation, walking on uneven ground[,] steel slopes, snags and stump holes" and details the "measures taken to reduce the hazards," including "a safety briefing" for personnel and following certain safety

---

[5] Whether the plan included or addressed "smoke exposure" or "smoke on roads" is not relevant to plaintiff's negligence claims, so the court does not address whether this element was mandatory or whether it was included in the plan.

14

standards. *Id.* at 13. Viewing these facts in the light most favorable to the plaintiff, as the court must when jurisdictional factual issues are intertwined with the merits of the case, defendant still meets its burden to show that the mandatory element of Element Thirteen does not support the exercise of jurisdiction, because it was satisfied by the burn plan.

### b. Susceptible to Social, Economic, or Political Policy Analysis

Here as well, the court need not proceed to the second step of the Supreme Court's test for the application of the discretionary function exception, because Element Thirteen's requirements, though specific and mandatory, were met by defendant and therefore do not support the exercise of jurisdiction.

### C. Warnings After Snowfall

Finally, plaintiff argues that "USFS' failure to provide warnings of the concealed dangerous condition it created—burning piles buried under the snow—is not susceptible to a policy analysis and thus fails prong two of the discretionary function test." Opp'n at 18. Plaintiffs do not argue that the failure to provide warnings was subject to a mandatory and specific policy, so in this case the court proceeds to step two of the discretionary function test.

The Ninth Circuit "has acknowledged the 'weaving lines of precedent regarding what decisions are susceptible to social, economic, or political policy analysis,' particularly in cases in which the allegation of agency wrongdoing involves a failure to warn." *Young v. United States*, 769 F.3d 1047, 1055 (9th Cir. 2014) (quoting *Whisnant*, 400 F.3d at 1181). On the one hand, the Ninth Circuit has held that "although an agency's decision to adopt certain safety precautions as opposed to others may be based in policy considerations, generally, 'the implementation of those precautions is not. Safety measures, once undertaken, cannot be shortchanged in the name of policy.'" *Bailey v. United States*, 623 F.3d 855, 861 (9th Cir. 2010) (quoting *Whisnant*, 400 F.3d at 1182). Yet, "[t]he implementation of a government policy *is* shielded where the implementation itself implicates policy concerns, such as where government officials must consider competing fire-fighter safety and public safety considerations in deciding

how to fight a forest fire." *Whisnant*, 400 F.3d at 1182 n.3 (emphasis in original) (citing *Miller*, 163 F.3d at 595–96)

Regarding a failure to warn, the Ninth Circuit has generally held that decisions regarding how to warn the public of safety hazards are shielded by the discretionary function exception. *See Valdez*, 56 F.3d at 1178, 1180 (9th Cir. 1995) (government's decision not to post signs warning of obvious dangers such as venturing off marked trails to walk next to face of waterfall, and government's decision to use brochures rather than posted signs to warn hikers of dangers of unmaintained trails, involved exercise of policy judgment of type Congress meant to shield from liability); *Childers,* 40 F.3d at 976 ("[D]ecisions as *to the precise manner* in which NPS would warn the public as to trails which are left open, but unmaintained in the winter, clearly fall within the discretionary function exception.") (emphasis in original). However, where the government (1) fails to provide any warning of (2) a hazard of which the government knows or should have known, the Ninth Circuit has held such a decision is not protected by the discretionary function exception, unless the government can show "some support in the record that the particular decision the government made was actually susceptible to analysis under the policies the government identified," *Morales v. United States*, 895 F.3d 708, 716 (9th Cir. 2018) (internal quotation marks, citation omitted). *See Young*, 769 F.3d at 1057 ("A decision not to warn of a specific, known hazard for which the acting agency is responsible is not the kind of broader social, economic or political policy decision that the discretionary function exception is intended to protect.") (citation omitted); *see also Sutton v. Earles*, 26 F.3d 903, 910 (9th Cir. 1994) (same); *Summers v. United States*, 905 F.2d 1212 (9th Cir. 1990) (government's failure to post sign to warn of risk of stepping on hot coals left in government-sanctioned fire rings was not result of decision reflecting policy considerations).

As an initial matter, here, the analysis depends on whether the hazard at issue is the prescribed fire, for which the government did provide some warning, *see* Mot. at 13–14, or the prescribed fire blanketed by recent snowfall, for which plaintiffs argue there was no warning at all, Opp'n at 18–19. Plaintiffs point out that USFS's warnings identifying the prescribed fire "were all made under the assumption that the fires themselves would serve as warnings of the

hazards. But, that situation changed when the fires were covered in snow. At that point, they were *hidden* dangers that only the USFS knew about." *Id*. (emphasis in original). Plaintiff's distinction is well-taken. Even if USFS had placed one of its prescribed burn warning signs where plaintiff was sledding, a reasonable person might see such a warning and look out for evidence of a fire—smoke, ash, embers—but not necessarily suspect that a nearby patch of snow concealed smoldering embers. Because the concealed embers were an altogether different hazard from the prescribed fire, this case falls within the line of cases in which the government provided no warning of a hazard that was known or should have been known. *See Summers*, 905 F.2d at 1215; *Young*, 769 F.3d at 1057.

However, unlike in *Young*, the government here has shown "some support in the record" to indicate that "the failure to provide signs resulted from a decision grounded in economic, social, or political policy." *Young*, 769 F.3d at 1057–59; *but see Chadd*, 794 F.3d at 1109 ("[T]he decision giving rise to tort liability 'need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis.'") (quoting *Miller*, 163 F.3d at 593). The government argues that "[a] requirement that the Forest Service must make additional warnings after every storm would directly reduce the number of prescribed fires [USFS] is able to complete . . . ." Reply at 9. Although "the fact that [defendant was] required to work within a budget does not make [its decision] a discretionary function for purposes of the FTCA," *ARA Leisure Servs. v. United States*, 831 F.2d 193, 195 (9th Cir. 1987), the decision here involved more than simple cost concerns. The government cites a declaration by John Washington, the Forest Prescribed Fire and Fuels Specialist on the Basin unit, who explains that Basin staff "do not return to on-going prescribed fire project sites to place additional signs or provide additional warnings after a snow storm," because "snowstorms are not uncommon" in the area and

> [r]equiring personnel to return to each project site in patrol status to place additional signs or make other warnings after a snow storm . . . would significantly reduce the time fire crews have available to actually conduct prescribed fires and would directly reduce the total number of prescribed fires [Basin] staff are able to complete each season.

Supp'l Washington Decl., ECF No. 29-1, ¶ 3.  In other words, given the time constraints imposed by weather conditions and limited resources, the USFS decided not to post signs following a snowfall, after weighing the number of prescribed fires against public safety risks.  Therefore, the decision is protected by the discretionary function exception to the FTCA.  *See Morales*, 895 F.3d at 716; *see also Soldano v. United States*, 453 F.3d 1140, 1148 (9th Cir. 2006) ("[d]eciding whether to warn of the potential danger of stopped traffic at the site of the accident was a policy judgment call of the kind that the discretionary function exception was designed to shield," because agency "must balance a panoply of social, economic and political considerations applicable to the distinctive nature of park roads") (internal quotation marks, citation omitted).

IV. CONCLUSION

For the reasons set forth above, the court DENIES defendant's motion to dismiss plaintiff's negligence claim insofar as that claim arises from USFS's alleged failure to ensure an appropriate burn boss supervised the Meow 175 fire. The motion is GRANTED with respect to all other grounds for plaintiff's negligence claim.

IT IS SO ORDERED.

DATED: March 8, 2019.

_____
UNITED STATES DISTRICT JUDGE