UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIANFRANCO RUFFINO, | No. 2:16-cv-02719-KJM-CKD |
| Plaintiff, | ORDER |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Gianfranco Ruffino was severely burned when his sled ran into a patch of smoldering brush hidden beneath the snow near South Lake Tahoe, where the U.S. Forest Service was conducting a controlled burn. Ruffino sued the United States under the Federal Tort Claims Act (FTCA). The United States now moves for summary judgment, arguing the court has no subject matter jurisdiction over Ruffino's claims. The court held a hearing on December 11, 2020. Frederick Schenk appeared for Ruffino, and Rachel Davidson appeared for the United States. As explained in this order, Ruffino has not identified any mandatory duty left unfulfilled by the Forest Service. For that reason, the United States has not waived its sovereign immunity, and the court lacks jurisdiction to consider Ruffino's claims. **The motion is granted**.

/////

## I. BACKGROUND

The following facts are not subject to genuine dispute. In the late fall of 2015, the Forest Service was overseeing implementation of a prescribed burn plan near South Lake Tahoe, including a burn it called "Meow 175." Prev. Order at 2 (March 8, 2019), ECF No. 36. The Forest Service considered Meow 175 a low-risk, low-complexity fire. Fire Plan at A-1, A-4, ECF No. 27-6. Meow 175 was ignited on November 12, 2015 and remained in "patrol status" for the next five days. Prev. Order at 2.

Dave Soldavini, a qualified "burn boss," supervised Meow 175 on the first day of the burn. *Id.* at 9. He was not on site for the next two days. *Id.* at 9–10. Brian Etheridge, also a "burn boss," patrolled Meow 175 those days. Etheridge Decl. ¶¶ 3–6, ECF No. 52-4. During his patrols, Etheridge monitored burn piles, "mop-up efforts" and staffing levels. *Id.* ¶ 7. On his first day, Etheridge saw minimal smoke and instructed crews to secure smoldering piles. *Id.* The next day, he instructed crews to continue patrolling smoldering burn piles. *Id.* ¶ 9. He logged his observations and instructions to crews with the California Department of Forestry and Fire Protection soon afterward. *Id.* ¶¶ 7–9 & Ex. 1, ECF No. 52-4.

Ruffino was sledding in the area of the Meow 175 burn on the third day of the burn. Prev. Order 2. He suffered second- and third-degree burns after his sled stopped in a patch of still-smoldering vegetation, which had been covered by a recent snowfall. *Id.* He then filed this action, asserting a single claim for negligence under the FTCA. Compl. ¶¶ 6–31, ECF No. 1. The United States moved to dismiss for lack of subject matter jurisdiction, and the court granted the motion in part. *See generally* Prev. Order. The court found a genuine dispute of material fact remained unresolved at the time: was an appropriate burn boss supervising the Meow 175 burn as required by the Forest Service's regulations? *See id.* at 10. That unresolved dispute prevented the court from concluding, as the United States urged, that the government had fulfilled every specific and mandatory duty related to the Meow 175 burn. *See id.* at 10, 18. The court dismissed Ruffino's claims to the extent they were based on the Forest Service's alleged failures to analyze safety risks to the public, reduce those risks, and give further warnings that snow might conceal still-burning vegetation. *See id.* at 11–18. The case proceeded insofar as Ruffino's

1  negligence claim arose from the Forest Service's alleged "failure to ensure an appropriate burn
2  boss supervised the Meow 175 fire." *See id.* at 18.

3  The United States now moves for summary judgment. Mot. Summ. J., ECF No. 52. It
4  argues the factual dispute described above has been resolved and the government is protected by
5  sovereign immunity as a result. *See generally id.* Ruffino opposes, Opp'n, ECF No. 53, and the
6  United States has replied, Reply, ECF No. 54.

7  **II.   LEGAL STANDARD**

8  A court can grant summary judgment "if . . . there is no genuine dispute as to any material
9  fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The
10 "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved
11 only by a finder of fact because they may reasonably be resolved in favor of either party."
12 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

13 The moving party bears the initial burden of showing the district court "that there is an
14 absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S.
15 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there
16 is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
17 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must cite "particular parts of
18 materials in the record . . . ; or show . . . that the materials cited do not establish the absence or
19 presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
20 support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The
21 nonmoving party] must do more than simply show that there is some metaphysical doubt as to the
22 material facts."). Moreover, "the requirement is that there be no *genuine* issue of *material* fact
23 . . . . Only disputes over facts that might affect the outcome of the suit under the governing law
24 will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48
25 (emphasis in original).

26 In deciding a motion for summary judgment, the court draws all inferences and views all
27 evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88;
28 *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could

1  not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for
2  trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*,
3  391 U.S. 253, 289 (1968)).

**III. DISCUSSION**

The United States may not be sued without its consent; if it does consent, the terms of its consent define the scope of the court's jurisdiction. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The FTCA provides a limited waiver of sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 813 (1976). Under the "discretionary function" exception to the FTCA, the government is not liable for acts grounded in public policy considerations that involve an element of judgment. *See* 28 U.S.C. § 2680(a) (excluding from liability "an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function"); *see also United States v. Gaubert*, 499 U.S. 315, 322–23 (1991).

The Supreme Court prescribes a two-part test for determining if a function is "discretionary" under this exception. *See Gaubert*, 499 U.S. at 322–25; *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988). First, the court asks whether the challenged action was discretionary or if "it was governed by a mandatory statute, policy, or regulation." *Whisnant v. United States*, 400 F.3d 1177, 1180–81 (9th Cir. 2005). Second, if the action was discretionary, the court asks whether the challenged action is of the type Congress meant to protect, "i.e., whether the action involves a decision susceptible to social, economic, or political policy analysis." *Id.*

Here, the Interagency Prescribed Fire Planning and Implementation Procedures Guide, PMS 484, sets the minimum standards for prescribed burns. *See* PMS 484 at 7, ECF No. 53-1.[1] PMS 484 is a binding "federal statute, regulation, or policy." Prev. Order 8–9 (citation omitted). Under PMS 484, the Forest Service was required to staff a level three burn boss to the Meow 175 burn because it was a low complexity burn. *See* PMS 484 at 10 (referring to an "RXB3," which

---

[1] To avoid confusion, pages cited in this document are those applied by the CM/ECF system at the top right of each page.

the parties do not dispute is a reference to a level three burn boss); Prev. Order 9. This is a specific and mandatory requirement. Prev. Order at 9. As a result, the discretionary function exception would not protect the United States if the Forest Service did not staff the Meow 175 burn with a level three burn boss. *Id.* at 10.

At the time the court issued its order on the United States' motion to dismiss, the evidence did not show whether a qualified burn boss was "supervising" the burn in compliance with PMS 484. Prev. Order 10. The record showed only that Etheridge had done "some patrolling." *Id.* It was unclear whether he had also "[s]upervise[d] assigned personnel and directed the ignition, holding and monitoring operations" and was also "[r]esponsible for implementation including mop up and patrol." *Id.* at 9 (quoting PMS 484 at 15). The United States has now produced undisputed evidence that Etheridge is a level three burn boss who was responsible for the Meow 175 burn on the day Ruffino was injured. *See* Etheridge Decl. ¶¶ 3, 6. He monitored the burn piles and "mop-up efforts." *Id.* ¶ 7. He also evaluated staffing levels, provided crews with instructions to secure smoldering piles, patrolled smoldering burn piles, and reported to the California Department of Forestry and Fire Protection. *Id.* ¶¶ 7–9 & Ex. 1.

Ruffino disputes neither that Etheridge is a qualified level three burn boss, nor that Etheridge acted as captain at the Meow 175 burn, nor that he fulfilled the responsibilities described above. *See* Opp'n at 5. Ruffino argues instead that Etheridge was not "acting in the capacity" of a burn boss because he did not personally fulfill all twenty-three "enumerated responsibilities of the prescribed burn boss" listed in PMS 484. *Id.* at 5, 7–8. For example, PMS 484 requires a burn boss to "[o]btain current weather and smoke management forecasts, updates and special advisories from a meteorologist." PMS 484 at 15. Ruffino contends Etheridge did not fulfill this responsibility, which he describes as "crucial" due to the snowfall that later obscured still-smoldering remains of the burn. Opp'n at 7. Ruffino argues similarly that Etheridge was not "designated as the prescribed Burn Boss." *Id.* at 5.

Ruffino cannot succeed on the basis of these arguments for several reasons. First, his position relies on unsupported assumptions about the Forest Service's regulations. Although PMS 484 does list many responsibilities for burn bosses, it does not follow that one person must

5

personally fulfill all twenty-three of these responsibilities to qualify as a burn boss. Rather, PMS 484 anticipates that some responsibilities may be delegated or fulfilled by another person. *See, e.g.*, PMS 484 at 15 (providing burn boss must "[d]eclare the prescribed fire out unless the responsibility for it is formally passed to another prescribed fire burn boss . . . or other designated personnel . . . ."). Ruffino's argument also depends on the assumption that all twenty-three of the listed responsibilities must be fulfilled on every day of a burn. Again, that appears to be incorrect. Some of the responsibilities must be completed before a burn, such as "[e]nsur[ing] pre-burn considerations and monitoring is completed," "[c]onduct[ing] the test fire and document[ing] the results," and "[e]nsur[ing] that adjacent landowners and other notifications are made and are documented, prior to ignition." *Id.* Other responsibilities can be completed only after a burn, such as the responsibility to "[d]eclare the prescribed fire out unless the responsibility for it is formally passed to another." *Id.* At hearing, plaintiff's counsel conceded only a subset of burn boss duties are relevant. In sum, the undisputed facts do not permit the conclusion that the United States fell short of any mandatory obligations if Etheridge did not personally complete each of the twenty-three listed responsibilities of a level three burn boss.

Second, although Ruffino contends that no burn boss was "designated," Opp'n at 5, he has not identified any regulation or statute that required the Forest Service to formally designate Etheridge or anyone else as a burn boss. He relies instead on deposition testimony, but according to that testimony, it was enough for someone to be in charge. *See* Buckley Dep. at 106–07, ECF No. 53-3. At hearing, plaintiff's counsel could not identify any provision of PMS 484 requiring a burn boss to be formally designated. Ruffino could not prevail at trial by proving no one was formally or officially "designated."

Third, as discussed above and in the court's previous order, the United States has not waived its sovereign immunity over claims about the Forest Service's "exercise . . . or the failure to exercise or perform a discretionary function." Prev. Order at 5 (citing 28 U.S.C. § 2680(a)). Several of the twenty-three responsibilities listed in PMS 484 impose duties that call for the exercise of judgment, such as "ensuring that the safety and welfare of all assigned personnel and public is maintained." PMS 484 at 15. These policies are similar to those the Ninth Circuit has

6

held are discretionary under the exception in § 2680(a).  *See Blackburn v. United States*, 100 F.3d 1426, 1431 (9th Cir. 1996) (holding policy was discretionary because it did not "set out the specific means" by which government employees were to "identify hazards" and "protect park visitors"); *Valdez v. United States*, 56 F.3d 1177, 1180 (9th Cir. 1995) (holding policy was discretionary because government "cannot apprise the public of every potential danger").  The court thus concluded in its previous order that the United States had carried its burden under the discretionary function exemption in § 2680(a), with one exception: whether a qualified burn boss was supervising.  *See* Prev. Order at 11–18.  It is now undisputed that the United States fulfilled that obligation, and Ruffino cannot show otherwise by criticizing Etheridge's efforts to fulfill indisputably discretionary duties.  If that argument could succeed, it would short-circuit § 2680(a).

Finally, Ruffino's argument relies on an incorrect perception of his burden in opposing summary judgment.  He bears the burdens of establishing the court's subject matter jurisdiction under the FTCA's general waiver of immunity, *Prescott v. United States*, 973 F.2d 696, 701–02 (9th Cir. 1992), and of proving each element of his negligence claim under California law, including that the United States breached a duty of care, *see, e.g.*, *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001).  For that reason, the United States can succeed at summary judgment by pointing to "an absence of evidence" supporting Ruffino's allegation that the United States breached a mandatory duty imposed by PMS 484.  *Celotex*, 477 U.S. at 325.  The United States carried that initial burden by "informing [this] court of the basis for its motion" and by citing evidence, including Etheridge's declaration, that "demonstrate[s] the absence of a genuine dispute."  *Id.*  The United States has no obligation to "support its motion with affidavits or other similar materials *negating* [Ruffino's] claims."  *Id.* at 323 (emphasis in original).  In opposition, Ruffino must go "beyond the pleadings" and cite "specific facts" in the record "showing that there is a genuine issue for trial."  *Id.* at 324 (citation omitted).

It is not difficult to imagine what Ruffino could have relied on here.  Did Ruffino ask Forest Service employees in their depositions whether anyone checked weather reports or conducted briefings, for example?  Or did the United States respond to an interrogatory or request

for admission about who fulfilled the duties in PMS 484? Ruffino has not cited any evidence addressing these questions. He relies instead on mere assertions. *See* Opp'n at 7–8. Thus it is unclear what he could offer at trial to show the United States breached a duty of care.

Although the United States ultimately "bears the burden establishing that the [discretionary function] test is met and that discretionary immunity applies," Ruffino bears the burden "of coming forth with sufficient evidence to establish there are genuine issues of material fact." *Miller v. United States*, 163 F.3d 591, 594 (9th Cir. 1998). The United States has come forward with evidence to carry its burden. For example, as summarized above and in the court's previous order, the United States has cited evidence to show that the burn boss responsibilities at the core of Ruffino's claims require judgment calls about warnings, safety and the extent of a prescribed burn. *See, e.g.*, PMS 484 at 15 The United States has also shown that when exercising that judgment, the Forest Service's employees must make the sort of policy choices that Congress can be expected to have entrusted to the Forest Service. *See, e.g.*, Prev. Order at 16 (collecting authority about giving warnings). Ruffino did not cite evidence to create a genuine dispute of fact in response to the United States' previous motion, and he has not done so now. The United States has carried its burden to show the discretionary exception applies.

**IV.     CONCLUSION**

When the United States moved to dismiss this action based on its sovereign immunity, one question was unresolved: was a qualified burn boss supervising the burn at the time Ruffino was injured? It is now undisputed a level three burn boss supervised Meow 175 on the day Ruffino suffered burns. "[I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." *Gaubert*, 499 U.S. at 324. The motion for summary judgment is thus **granted**. This order resolves ECF No. 52.

The Clerk of Court is instructed to **close this case**.

IT IS SO ORDERED.

DATED: February 1, 2022.

CHIEF UNITED STATES DISTRICT JUDGE